

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 31, 2023

**BY ECF**
The Honorable John P. Cronan
United States District Judge
United States Courthouse
500 Pearl St.
New York, NY 10007

    Re:    *United States v. Douglas McLarty*, 15 Cr. 95 (JPC)

Dear Judge Cronan:

    The Government respectfully submits this letter in advance of the February 7, 2023, sentencing of the defendant, Douglas McLarty, in the above-captioned case. For the reasons set forth below, the Government respectfully submits that a sentence of 24 months' imprisonment, to be served consecutively to the defendant's prior term of imprisonment in *United States v. McLarty*, 21 Cr. 498 (AT), would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **I.**    **Offense Conduct**

    On May 12, 2021, a confidential source ("CS-1"), met with McLarty to discuss a purported robbery of narcotics traffickers (the "Robbery"). (Presentence Investigation Report "PSR" ¶ 12.)[1] CS-1 stated that the alleged narcotics traffickers utilized rental apartments to sell narcotics. (*Id.* ¶ 13.) CS-1 further informed McLarty that the narcotics traffickers were believed to be in possession of a multi-kilogram quantity of fentanyl. (*Id.*) CS-1 inquired whether McLarty would be interested in assisting with the Robbery. (*Id.* ¶ 14.) McLarty informed CS-1 that he was prepared to carry out the Robbery and that he would bring an associate to assist with the Robbery. (*Id.*) McLarty also agreed to sell the fentanyl after it was stolen and to provide a percentage cut of the contemplated sale to CS-1. (*Id.*)

    On June 1, 2021, McLarty, CS-1 and another confidential source ("CS-2") met to discuss the Robbery. CS-1 and CS-2 informed McLarty that the Robbery would take place at a location in Manhattan (the "Robbery Site"), and that the Robbery would involve thirteen kilograms of

---

[1] The Presentence Investigation Report referenced herein was issued by the United States Probation Office on April 22, 2022 in *United States v. McLarty*, 21 Cr. 498 (AT).

1

cocaine, rather than fentanyl. (*Id*. ¶ 16.) McLarty agreed to meet at the location of the Robbery Site later that night to conduct surveillance of the area and to assess whether there were any cameras in the area and possible escape routes. (*Id*. ¶¶ 19.) McLarty further stated that he would bring three associates with him to assist with the Robbery and that he was prepared to use force to carry out the Robbery. (*Id*. ¶ 18.) McLarty met CS-1 and CS-2 at the Robbery Site that evening and, after conducting surveillance of the area, agreed to meet the following day to conduct the Robbery. (*Id*.)

On June 2, 2021, McLarty arrived at the Robbery Site and conducted a surveillance loop of the premises. (*Id.* ¶ 24.) McLarty then left the vicinity to obtain a new vehicle and firearms. (*Id.* ¶ 25.) McLarty returned to the Robbery Site shortly thereafter in a new vehicle (the "Vehicle") and informed CS-1 and CS-2 that he was ready to proceed with the Robbery. (*Id.* ¶ 29.) Law enforcement subsequently apprehended McLarty and two other individuals from the Vehicle—co-defendants David Powell and Michael Cato—and placed them under arrest. (*Id.* ¶ 34.) McLarty and Powell were dressed in black clothing, while Cato wore a black ski mask. (*Id*.) Law enforcement subsequently searched the Vehicle and recovered two firearms and a knife. (*Id.* ¶ 35.) One of the firearms was located in a handbag on the rear-passenger's seat next to where McLarty had been seated. (*Id*. ¶ 35(2).)

## II.   Procedural History

On June 3, 2021, McLarty, Cato and Powell were charged by complaint with conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951; conspiracy to distribute and possess with the intent to distribute five kilograms and more of cocaine, in violation of Title 21, United States Code, Section 846; and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

On June 23, 2021, a violation report was issued in both *United States v. McLarty,* 15 Cr. 593 (PGG) and *United States v. McLarty*, 15 Cr. 95 (JPC) charging the defendant with violation specifications relating to the same criminal conduct.

On August 4, 2021, an Indictment was filed charging McLarty, Cato, and Powell with the same offenses. *See United States v. McLarty*, 21 Cr. 498 (AT). On November 15, 2021, McLarty pleaded guilty pursuant to a plea agreement to conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951.   On April 26, 2022, McLarty was sentenced to 115 months' imprisonment.

On August 19, 2022, McLarty admitted to Specification One of the June 2021 violation report, namely, conspiracy to commit Hobbs Act robbery, in *United States v. McLarty,* 15 Cr. 593 (PGG) and was sentenced to 18 months' imprisonment.

On December 14, 2022, McLarty admitted to Specification One of the June 2021 violation report, namely, conspiracy to commit Hobbs Act robbery in the instant case, *United States v. McLarty*, 15 Cr. 95 (JPC).

### III. Discussion

#### A. Applicable Law

In imposing a sentence for a violation of supervised release, the Court must consider the factors listed in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote specific and general deterrence, and the applicable Guidelines range. *See* 18 U.S.C. §§ 3553(a), 3583(e)(3). The primary purpose of a revocation sentence is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b); *see also United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

The Guidelines applicable to violations of supervised release are policy statements only and, like all Guidelines, are advisory in light of *Booker*. The Guidelines range depends on the grade of the supervised release violation and the Criminal History Category of the defendant at the time of his original sentence. Here, the defendant was in Criminal History VI and committed a Grade A violation, so the applicable range is 33 to 41 months' imprisonment. *See* U.S.S.G. §§ 7B1.1 – 7B1.4. The statutory maximum term of imprisonment is two years. 18 U.S.C. § 3583(e)(3).

"[I]t is the policy of the Commission that the sanction imposed upon revocation is to be served consecutively to any other term of imprisonment imposed for any criminal conduct that is the basis of the revocation." U.S.S.G. Ch. 7, Pt. B; *see also id.* § 7B1.3(f) (noting that "[a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.")

#### B. The Court Should Impose a Sentence of 24 Months' Imprisonment

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a), supports the imposition of a sentence of 24 months' imprisonment, the statutory maximum, in light of the significant breach of the Court's trust, the seriousness of the offense, the need for specific deterrence, and the need to protect the community from further crimes of the defendant.

First, the defendant committed a very serious and dangerous offense. McLarty plotted an armed robbery for the purpose of obtaining and reselling substantial amounts of cocaine. As Judge Torres noted in imposing sentence in *United States v. McLarty*, 21 Cr. 498 (AT), the defendant was the "mastermind behind this plan" and was "prepared to utilize lethal violence in commission of the robbery." (Doc. No. 82 at 22). The defendant's activity could easily have resulted in real civilian victims had he plotted the Robbery with other like-minded individuals, rather than with law enforcement sources. In addition, the defendant sought to acquire large amounts of cocaine with the aim of reselling it for profit. The defendant's possession of two firearms and a knife, his

willingness to use force, and his aim of acquiring substantial amounts of narcotics, collectively posed a serious threat to civilians and law enforcement alike and was as significant breach of the court's trust.

Second, the defendant's extensive and violent criminal history demonstrates the need for a significant sentence to deter the defendant from committing future offenses. Here, McLarty committed the instant offense almost immediately after being released from a halfway house following his prior federal convictions. McLarty first encountered the criminal justice system approximately thirteen years ago, at the young age of fourteen, when he was twice convicted of attempted murder. (PSR ¶¶ 56-57.) Since then, McLarty has continuously reoffended, which, in addition to his two prior state convictions for attempted murder, include federal convictions for illegally possessing a firearm and the instant underlying case involving racketeering conspiracy. The defendant's continuous criminal activity throughout the course of his young life warrants a substantial sentence to deter him from continuing to perpetrate violent crime.

Third, a substantial sentence is needed to protect the public from further crimes of the defendant. As specified above, the defendant is well familiar with the criminal justice system and has received substantial incarceratory sentences in the past. The defendant's criminal history demonstrates that the defendant has time and time again put the community at risk with his actions. Further, the defendant's activity in the instant offense demonstrates his immediate risk to the public and his willingness to recruit others in engaging in violent criminal conduct. Rather than learning from his prior criminal convictions, the defendant has not only continued to engage in violent criminal activity, but has lead others in doing the same. Thus, the defendant's pattern of behavior indicates that a significant period of incarceration is necessary to protect the public from future harm.

Finally, the Court should impose the instant sentence to run consecutively to the sentence imposed for the defendant's underlying offense in *United States v. McLarty*, 21 Cr. 498 (AT), in accordance with the Sentencing Commission's recommendation. *See* U.S.S.G. Ch. 7, Pt. B ("[I]t is the policy of the Commission that the sanction imposed upon revocation is to be served consecutively to any other term of imprisonment imposed for any criminal conduct that is the basis of the revocation."); *see also id.* § 7B1.3(f). Here, the defendant brazenly violated the terms of his supervised release by engaging in serious criminal conduct, conduct that was related to his prior criminal conviction, within months of his release. This affront to the Court's orders and serious breach of the Court's trust is exactly the type of separate misconduct that consecutive sentencing in the context of a violation of supervised release is intended to address. *See, e.g., United States v. Underhill*, 563 F. App'x 836, 838 (2d Cir. 2014); *United States v. Rivas*, 471 F. App'x 59, 60 (2d Cir. 2012). The Government submits, however, that the Court's sentence on the instant violation should be run concurrently to the defendant's prior sentence on his violation in *United States v. McLarty,* 15 Cr. 593 (PGG), since both violations stem from the same underlying offense conduct.

4

**IV.     Conclusion**

For the reasons set forth above, the Government respectfully submits that a sentence of 24 months' imprisonment, to be served consecutively to the defendant's prior term of imprisonment in *United States v. McLarty*, 21 Cr. 498 (AT), is sufficient but not greater than necessary to achieve the purposes of sentencing and would be fair and appropriate in this case.

> Respectfully submitted,
>
> DAMIAN WILLIAMS
> United States Attorney
>
> by: ____/s/_____
> Mitzi Steiner
> Assistant United States Attorney